ERIC DUNHAM, BY AND THROUGH HIS MOTHER AND NEXT FRIEND,
WENDY DUNHAM, APPELLANT, V. HUNT MIDWEST
ENTERTAINMENT, INC., DOING BUSINESS AS WORLDS OF FUN,
APPELLEE.
WENDY LOU DUNHAM, APPELLANT, V. HUNT MIDWEST
ENTERTAINMENT, INC., DOING BUSINESS AS WORLDS OF FUN,
APPELLEE.

520 N.W.2d 216

Filed July 26, 1994.    Nos. A-93-023, A-93-048.

Jean V. Faulconbridge and Ronald J. Palagi for appellants.

Betty L. Egan, of Walentine, O'Toole, McQuillan & Gordon, and Paul G. Schepers, of Seigfreid, Bingham, Levy, Selzer & Gee, for appellee.

SIEVERS, Chief Judge, and HANNON and MILLER-LERMAN, Judges.

SIEVERS, Chief Judge.

This appeal addresses whether Nebraska courts have jurisdiction over a Missouri amusement park which advertises in this state for customers. Wendy Lou Dunham and Eric Dunham each brought an action against Hunt Midwest Entertainment, Inc., doing business as Worlds of Fun, in the district court for Douglas County, alleging that each had been injured on an amusement ride at Worlds of Fun in Kansas City, Missouri. Worlds of Fun filed a special appearance, alleging that the district court for Douglas County lacked personal jurisdiction over Worlds of Fun. The district court judges assigned to the cases dismissed the actions for lack of personal jurisdiction, and Wendy and Eric have appealed to this court. For purposes of convenience, we issue this opinion in both cases, affirming the decisions of the trial courts because sufficient contacts with the forum state of Nebraska have not been shown.

## STATEMENT OF FACTS

Wendy and her son, Eric, allege that on September 15, 1990, they were injured while riding on an amusement ride at Worlds of Fun. Wendy and Eric claim that they were injured when thrown forward in the car in which they were riding and allege that their injuries were proximately caused by Worlds of Fun's

failure to inspect the premises, to maintain the premises in a reasonably safe condition, and to adequately train and supervise its employees.

A hearing was held on the special appearance of Worlds of Fun, and the affidavits of Roger W. Morgan, a media marketing consultant, and Wendy were submitted by the plaintiffs. The defendant offered the affidavit of the president of Worlds of Fun, Lee Derrough, who attested that Worlds of Fun is a Delaware corporation, registered to do business in Missouri. Derrough attested that Worlds of Fun is not authorized to do business in Nebraska, it does not maintain an office in Nebraska, and it has no employees in Nebraska. In her affidavit, Wendy stated that prior to attending Worlds of Fun, she heard advertisements regarding discount tickets to Worlds of Fun. The advertisements stated that half-price tickets were available at the Worlds of Fun gate only if a customer had a coupon, which could be obtained at Baker's or Hy-Vee grocery stores in Omaha. Wendy's affidavit said that she picked up a discount coupon at an Omaha grocery store and that she and her family would not have visited Worlds of Fun unless they had received a discount.

Morgan attested that Worlds of Fun advertises on seven Omaha radio and television stations and has conducted advertising in Omaha on an ongoing basis for the past 10 years. Morgan attested to his opinion that Worlds of Fun spends approximately $100,000 per year on television and radio advertising in the Omaha market. Morgan stated that Worlds of Fun pays for its advertising time partly in cash and partly in admission tickets. It was Morgan's opinion that Worlds of Fun is and has been targeting the Omaha market with its advertising and that it "would not continue to advertise this heavily in Omaha, if a significant amount of its revenue did not come from the Omaha market."

## ASSIGNMENTS OF ERROR

Wendy and Eric allege that the trial courts erred when they found that Worlds of Fun did not have sufficient contacts with Nebraska to satisfy the requirements of Nebraska's long-arm statute and the due process requirements of the U.S. Constitution.

## STANDARD OF REVIEW

When determination of a jurisdictional question involves factual findings, a trial court's decision on the question of jurisdiction will be upheld unless the factual findings concerning jurisdiction are clearly incorrect. *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989). Cf. *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986) (bench trial; law action). When a jurisdictional question does not involve a factual dispute, determination of the jurisdictional issue is a matter of law, which requires an appellate court to reach a conclusion independent from the trial court's conclusion on the jurisdictional issue. *24th and Dodge Ltd. v. Commercial Nat. Bank*, 243 Neb. 98, 497 N.W.2d 386 (1993); *Williams v. Gould, Inc., supra*. Confronted with a special appearance, a plaintiff has the burden to establish facts which demonstrate the court's personal jurisdiction over the defendant. *Id.*

## ANALYSIS

Before a court can exercise personal jurisdiction over a nonresident defendant, the court must, first, determine whether a statutory standard of the long-arm statute is satisfied, and, if the long-arm statute has been satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.

*Id.* at 873, 443 N.W.2d at 585.

The Nebraska "long-arm statute," Neb. Rev. Stat. § 25-536 (Reissue 1989), provides that Nebraska courts may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or

solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

The Due Process Clause of the 14th Amendment operates to limit the power of a state to assert in personam jurisdiction over a nonresident defendant. *Pennoyer v. Neff*, 95 U.S. 714, 5 Otto 714, 24 L. Ed. 565 (1877). A state may exercise either general or specific personal jurisdiction over a defendant, so long as the defendant has sufficient contact with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Under the concept of general jurisdiction, the plaintiff's claim does not have to arise directly out of the defendant's contacts with the forum state, provided that the defendant has engaged in "continuous and systematic general business contacts" with the forum state. 466 U.S. at 416. If the defendant's contacts are neither substantial nor continuous and systematic, but the cause of action arises out of or is related to the defendant's contact with the forum, a court may assert " 'specific jurisdiction' " over the defendant, depending on the quality and nature of such contact. 466 U.S. at 414 n.8. Accord *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474 (9th Cir. 1986).

It is our view of the Nebraska long-arm statute that subsection (2) is broader and more inclusive than subsection (1). In following the rule from *Williams v. Gould, Inc.*, 232 Neb. 862, 873, 443 N.W.2d 577, 585 (1989), with which we began our analysis, we look to subsection (2) as the "statutory standard of the long-arm statute" to see if it is satisfied. Under subsection (2), due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant having minimum contacts with the forum, such that the

maintenance of the suit in the forum does not offend " 'traditional notions of fair play and substantial justice.' " *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Thus, the question is whether Nebraska may exercise in personam jurisdiction over Worlds of Fun under either general jurisdiction or specific jurisdiction concepts from *Helicopteros Nacionales de Colombia*, as those doctrines are "consistent with the Constitution of the United States," as stated in § 25-536(2).

### GENERAL JURISDICTION ANALYSIS

To determine if a defendant's activities qualify as " 'continuous and systematic' " or " 'substantial' " to satisfy general personal jurisdiction, the court must examine all of the defendant's activities which impact the forum state, "including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated there." *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d at 1478.

In *Helicopteros Nacionales de Colombia v. Hall, supra,* the Supreme Court of Texas had ruled that Helicol, the business involved, had sufficient contacts with Texas to allow the exercise of jurisdiction. The U.S. Supreme Court rejected that finding, observing that Helicol did not have a place of business in Texas, never had been licensed to do business there, and that its Texas contacts consisted of sending its chief executive officer to Houston for a contract negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopter equipment and training services from Bell Helicopter, located in Texas, for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training. The Supreme Court found that the one trip to Houston by Helicol's chief executive officer was not of a continuous and systematic nature. The Court pointed out that Helicol would not be involved in determining the location or identity of the bank upon which the checks it received would be drawn and that the unilateral activity of another party or third person is not an appropriate consideration when determining whether a

defendant has sufficient contact with a forum state to justify an assertion of jurisdiction. See *Kulko v. California Superior Court*, 436 U.S. 84, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978).

The Supreme Court in *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984), rejected the reliance of the Texas Supreme Court upon the purchases and related training trips, citing *Rosenberg Co. v. Curtis Brown Co.*, 260 U.S. 516, 43 S. Ct. 170, 67 L. Ed. 372 (1923) (finding that a clothing retailer in Tulsa, Oklahoma, who purchased a substantial portion of its merchandise from New York wholesalers to sell in its Tulsa store was not subject to jurisdiction in New York). The Court in *Helicopteros Nacionales de Colombia* held that in accordance with *Rosenberg Co.*, mere purchases, even if on regular intervals, are not enough to warrant the forum's exercise of in personam jurisdiction over a nonresident corporation "in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. at 418. The purchase of helicopters by Helicol from Bell Helicopter, as well as the training sessions which also occurred in Texas, were equated with the trips to New York by the buyer for the retail store in Tulsa in the *Rosenberg Co.* case.

*Doula v. United Technologies Corp.*, 759 F. Supp. 1377 (D. Minn. 1991), is an example of the forum state's exercising general jurisdiction over an out-of-state company. The plaintiffs filed suit in Minnesota against the defendant, the parent company of Pratt & Whitney Aircraft, alleging that a defective engine caused a plane to explode, injuring the plaintiffs. The defendant was a Delaware corporation, with its principal place of business in Connecticut. The court found that the defendant derived substantial income from its business in Minnesota through the sale of jet engines; that Northwest Airlines, located in Minnesota, had an ongoing relationship with the defendant; and that the defendant had at least four employees located in Minnesota who worked with Northwest Airlines as customer service representatives. The court found that "[t]hese contacts are sufficient to show that UTC (Delaware) conducts a purposeful, continuous and systemic [sic] business in Minnesota. Based on the foregoing, the

defendant has established such pervasive and general business contacts that the exercise of general jurisdiction is appropriate." *Id*. at 1381.

A Michigan court found general jurisdiction over an Illinois car importer in *Kircos v Goodyear Tire Co*, 70 Mich. App. 612, 247 N.W.2d 316 (1976). The second-named defendant, Carl Haas Automobile Imports, had been sued by Michigan residents after a tire, mounted on a car imported by Haas, exploded while the plaintiffs were in Wisconsin. Haas had no license to do business in Michigan, no resident agent, no place of business in Michigan, and did not own real or personal property in Michigan. However, the facts presented by the plaintiffs showed that Haas had solicited sales in Michigan by direct mail, advertising media, personal contact, and automobile races. It also maintained a dealer in Michigan. Furthermore, it realized an average of 2.78 percent of its total revenue during 1970-74 from Michigan customers and 1.67 percent of its total revenue ($32,117) from Michigan customers in the year preceding the action. Also, among Haas' customers were some of Michigan's large industries.

In *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474 (9th Cir. 1986), the plaintiff, a California resident, brought a breach of contract action and a claim of bad faith against Blue Cross, Blue Shield of Kansas City when the insurer refused to pay the plaintiff's medical expenses. The plaintiff's employer contracted with Blue Cross, Blue Shield to provide health insurance benefits to its employees, including the plaintiff. The court found that California courts could not exercise general jurisdiction over Blue Cross, Blue Shield. The court noted that the insurer was not licensed to do business in California; did not maintain an office there; had no agents for service of process, sales representatives, or employees in California; and paid no California taxes. The court noted that the only contact the company had with California was through the plaintiff's employer. Such contact was insufficient to show the continuous and systematic business activities in California needed for the exercise of general jurisdiction.

In the case at hand, Wendy's and Eric's only evidence of Worlds of Fun's contact with Nebraska is that Worlds of Fun

advertised on Omaha radio and television stations and that discount coupons for Worlds of Fun were available in Omaha. However, this evidence is not specific as to the amount or frequency of the advertising. With respect to the cost of the advertising, there is only a media consultant's opinion. Wendy and Eric have produced no evidence, for example, of any sales of Worlds of Fun tickets in Nebraska or redemptions of Nebraska-generated coupons, nor of the percentage or raw numbers of Worlds of Fun's revenue or customers which are derived from Nebraska or of the presence in Nebraska of Worlds of Fun employees for the purposes of promotion. See *Busch v. Sea World of Ohio*, 95 F.R.D. 336 (1982), as an example of a case in which the plaintiff's proof to establish jurisdiction was extremely precise, including yearly cost and newspaper linage for Sea World's advertising. Such precise evidence concerning Worlds of Fun's Nebraska advertising is not present in the record before us.

Worlds of Fun has presented evidence that it is not authorized to do business in Nebraska, has no employees here, and does not maintain an office or do any business in Nebraska. Upon the filing of a special appearance, the plaintiff has the burden to establish facts which demonstrate the court's personal jurisdiction over the defendant. *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989). Although the special appearances were sustained without comment, implicit in the trial courts' conclusions are factual findings that Worlds of Fun lacks continuous and systematic business contact with Nebraska. In *Williams v. Gould, Inc.*, 232 Neb. at 871, 443 N.W.2d at 584, the court held that such factual findings are to be upheld unless "clearly incorrect."

We find that the record is insufficient to demonstrate that Worlds of Fun had continuous and systematic business contacts with Nebraska so as to allow a finding of general jurisdiction under *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Worlds of Fun's business contacts for purposes of a general jurisdiction analysis are, in our view, much less than those which the U.S. Supreme Court found insufficient for general jurisdiction in *Helicopteros Nacionales de Colombia*. Thus, on the basis of

*Helicopteros Nacionales de Colombia* and the other cases we have discussed, the trial court's conclusion that jurisdiction was lacking is not clearly incorrect when analyzed from the standpoint of general jurisdiction.

SPECIFIC JURISDICTION ANALYSIS

We believe analysis of specific jurisdiction under § 25-536(2), permitting jurisdiction on any basis or contact which does not run afoul of the protections of the Due Process Clause of the 14th Amendment, must begin with *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). In *Burger King Corp.*, the defendant, a Michigan resident, had no physical ties to the forum state of Florida. However, the underlying suit was based on a breach of contract over a franchise agreement which the defendant deliberately reached out and made with the plaintiff, a Florida corporation. The claim in *Burger King Corp.* arose out of the defendant's deliberate forum-related activities and the franchise agreement, and therefore, personal jurisdiction could be exercised by the Florida courts over the defendant. Two of the basic requirements for specific jurisdiction are specified as follows in *Burger King Corp.*:

> By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer* v. *Heitner*, 433 U. S. 186, 218 (1977) (Stevens, J., concurring in judgment), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U. S. 286, 297 (1980).
>
> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton* v. *Hustler Magazine, Inc.*, 465 U. S. 770, 774 (1984), and the litigation results from alleged injuries that *"arise out of or relate to"* those

*activities*, *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U. S. 408, 414 (1984).

(Emphasis supplied.) 471 U.S. at 472-73.

■ In addition to the foregoing requirements of activity directed at residents of the forum and that the injury " 'arise out of or relate to' those activities," *Burger King Corp.* imposes the third requirement, described as the "constitutional touchstone," 471 U.S. at 474, which is whether the defendant purposefully established minimum contacts in the forum state. Accord *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). The *Burger King Corp.* Court rejected the notion that foreseeability of causing injury in the forum state is sufficient to establish such contacts so as to satisfy due process, and reiterated that the foreseeability which is crucial to due process is that the defendant's conduct in connection with the forum state " 'is such that he should reasonably anticipate being haled into court there.' " 471 U.S. at 474, quoting from *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

The U.S. Court of Appeals for the Ninth Circuit concluded from the applicable U.S. Supreme Court cases that the following tripartite analysis is useful in determining specific jurisdiction of a nonresident defendant:

> (1) [The] nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). See, also, *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392 (9th Cir. 1986); *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280 (9th Cir. 1977); *L. D. Reeder Contractors of Ariz. v. Higgins Industries*, 265 F.2d 768 (9th Cir. 1959).

The Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), stated that it is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protection of its law and that the " 'purposeful availment' " requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of " 'random,' " " 'fortuitous,' " or " 'attenuated' " contacts. 471 U.S. at 475. The Nebraska Supreme Court in *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d at 577 (1989), adopted this same standard, which originated in *World-Wide Volkswagen Corp. v. Woodson, supra*.

*Burger King Corp.* also holds that the absence of a defendant's physical presence in the forum state does not defeat in personam jurisdiction in an age when substantial amounts of business are transacted solely by mail and wire communications across state lines.

In the case at hand, there can be no doubt on this record that Worlds of Fun has purposefully directed its activities at Nebraska residents with the goal of enticing them to travel to its amusement park in Missouri to spend their entertainment dollars at that location, all to the presumed profit of Worlds of Fun. Thus, the first requirement of *Burger King Corp.* for specific jurisdiction is satisfied.

The question of whether Wendy's and Eric's personal injury claims are ones which arise out of or relate to Worlds of Fun's forum-related activities is more difficult. We defer that discussion momentarily to deal with the third requirement, that once the minimum contacts are established, the assertion of personal jurisdiction comports with fair play and substantial justice. *Burger King Corp.* sets forth some of the considerations under the third test, including the evaluation of the burden upon the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the intrastate judicial system's interest in obtaining the most efficient resolution of controversy, and the shared interest of states in furthering fundamental substantive social policies.

Applying the foregoing factors to the present case, we do not

believe, in this electronic age, that a Missouri corporation is unduly burdened, if at all, in litigating a case in the district court for Douglas County. It is to Nebraska that the injured plaintiffs return, and the medical, economic, and personal consequences of the injuries are visited upon them in this state, with corresponding "ripple" effects to medical providers, employers, and family members in this state. In our view, the State of Nebraska has a substantial interest in adjudicating the dispute. Clearly, an injured plaintiff has a substantial interest in obtaining convenient and effective relief, which we believe our trial courts provide, and as a matter of social policy, the courts of Missouri should share with us a common concern for speedy and efficient resolution of Wendy's and Eric's claims. Finally, we find nothing offensive to notions of fair play that Worlds of Fun, which advertised to entice Nebraska residents to come to its Missouri amusement facility, where they might be injured, would have to defend, in Nebraska, litigation arising from those injuries. In so concluding, we believe Worlds of Fun can fully anticipate that the consequences of injuries suffered by Nebraska residents who are attracted to Worlds of Fun will be endured principally in the State of Nebraska. *Burger King Corp.* states that sometimes the foregoing considerations serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than otherwise would be required. *Burger King Corp.* further observes that "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." 471 U.S. at 477. No such compelling case has been made by Worlds of Fun in the matter now before us, and we therefore conclude that exercise of jurisdiction by Nebraska's courts over Worlds of Fun does not offend notions of fair play and substantial justice. In other words, the exercise of such jurisdiction is reasonable.

We now return to the second requirement, whether Wendy's and Eric's injuries arise out of or are related to Worlds of Fun's activities in Nebraska, remembering that the only forum activity of Worlds of Fun is advertising and distributing discount admission coupons. The Nebraska Supreme Court

has not discussed the meaning of the "arising out of or related to" standard in any case involving the long-arm statute. The U.S. Supreme Court, despite Justice Brennan's dissent arguing that they should do so, has declined to discuss whether there is any distinction between controversies that "relate to" a defendant's contacts with a forum and those which "arise out of" such contacts. In a footnote, the majority in *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984), explained that it did not address the validity or consequences of any such distinction or whether there was in fact a distinction between the two terms. We cannot find any case in which the U.S. Supreme Court has discussed the matter since that time.

We are of the view that the second requirement for a finding of specific jurisdiction would not be satisfied if this requirement means a "causal connection" between the in-forum activities of Worlds of Fun and the injury. A causal connection would require that the injuries be the result, in a natural and continuous sequence, of the advertising *and* that the injury would not have occurred without the advertising, the latter requirement being commonly known as the "but for" rule. See *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 425 N.W.2d 872 (1988). See, also, NJI2d Civ. 3.41 (defining proximate cause). Wendy and Eric allege that their injuries were proximately caused by Worlds of Fun's failure to maintain and repair the ride in which they were passengers. Although the advertising may have "caused" Wendy and Eric to go to the amusement park by sparking their interest, the injuries, in a natural and continuous sequence, were not caused by the advertising. Thus, if the "arising out of" requirement resembles proximate cause, the requirement is not satisfied.

The term "arising out of" has been defined under the Nebraska Workers' Compensation Act. The act provides benefits to employees sustaining injury by accident "arising out of and in the course of" their employment. See Neb. Rev. Stat. § 48-101 (Reissue 1988). "Arising out of" as a requirement for a compensable injury refers to an injury which results from risks arising within the scope or sphere of employment. See *Rosemann v. County of Sarpy*, 237 Neb. 252, 466 N.W.2d 59

(1991). The court has also said that a claimant must establish that the employment "proximately caused an injury which resulted in disability compensable under the Workers' Compensation Act." *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 469, 461 N.W.2d 565, 573 (1990). Cf. *National Union Fire Ins. Co. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 (1966) (finding that unloading a gun in the backseat of a moving car did not arise from the use of the car and holding that the words "arising out of the use" are broad and comprehensive terms ordinarily understood to mean originating from, growing out of, or flowing from).

In *Busch v. Sea World of Ohio*, 95 F.R.D. 336 (1982), Sea World advertised in the forum, but the injury occurred on an amusement ride outside of the forum, allegedly from a failure to maintain the ride. The court held that "[a]lthough it cannot be said the advertising injured the minor plaintiff, her injuries did arise from defendant's activities, namely, advertising extensively in Pennsylvania." *Id.* at 340. In *Busch*, the plaintiff was attracted by the advertising, just as Wendy attests in her affidavit that she was. Although Wendy and Eric rely heavily on *Busch*, we find its conclusion to be at odds with more compelling authority. See *Pearrow v. National Life & Acc. Ins. Co.*, 703 F.2d 1067 (8th Cir. 1983) (holding that an injured tourist could not bring action in Arkansas for injury from a slip and fall at Opryland, located in Tennessee and owned by the defendant, since the injury did not arise out of the defendant's business conducted in Arkansas, to wit, soliciting insurance and advertising Opryland).

In *Chedid v. Boardwalk Regency Corp.*, 756 F. Supp. 941 (E.D. Va. 1991), a Virginia resident brought suit in federal court in Virginia against a New Jersey casino where he was injured in a slip-and-fall accident. Jurisdiction was said to be premised upon the casino's advertising and soliciting activities in Virginia. The court cast the question as whether the plaintiff's slip-and-fall lawsuit was one arising from the casino's advertising and soliciting activities as required by Virginia's long-arm statute. *Id.* The evidence established active solicitation of the plaintiff to come to the defendant's casino, which solicitation included personal telephone calls. The

plaintiff's evidence was that the trip during which he was injured resulted from such a solicitation. The court construed the phrase "arising from," finding that it required a "causal link between the acts relied on for personal jurisdiction and the cause of action asserted" and that it was more than simple " 'but-for' " causation, but, rather, was akin to legal or proximate cause. *Id.* at 943. The court held that "plaintiff's cause of action is one 'arising from' the defendant's alleged negligence in leaving the elevator floor wet and slippery, not from defendant's wholly unrelated advertising and solicitation activities." *Id.*

The court in *Chedid* relied upon *Pizarro v. Hoteles Concorde Intern., C.A.*, 907 F.2d 1256 (1st Cir. 1990), in which a resident of Puerto Rico who was injured in a Venezuela hotel sought to premise personal jurisdiction in Puerto Rico on the hotel's advertising there. The court found that the cause of action did not " 'arise out of or result from' " the Puerto Rican business transactions as required by Puerto Rico's long-arm statute. *Id.* at 1258. Also cited in *Chedid* was *Marino v. Hyatt Corp.*, 793 F.2d 427 (1st Cir. 1986), in which the negligent act of a hotel in Hawaii which resulted in a slip and fall did not arise from the reservations made in Massachusetts.

■ A common factual scenario regarding these issues involves cruise lines cases, and *Dirks v. Carnival Cruise Lines*, 642 F. Supp. 971 (D. Kan. 1986), collects a number of them. In *Dirks*, the evidence was that Carnival Cruise Lines advertised its cruises in periodicals and newspapers and on television in the State of Kansas and that in response thereto, the plaintiff purchased tickets from a Great Bend, Kansas, travel agent. The plaintiff brought suit in Kansas to recover expenses, damages, pain, and suffering as a result of eating food contaminated with a foreign object while the ship was cruising the ocean. The Kansas long-arm statute had a provision allowing the assertion of jurisdiction over nonresident defendants to the extent allowed by the Due Process Clause of the 14th Amendment, essentially identical to subsection (2) of the Nebraska long-arm statute. The federal court observed that the Kansas long-arm statute was to be liberally construed so as to allow jurisdiction over nonresident defendants to the extent allowed by the Due

Process Clause of the 14th Amendment, citing *Schlatter v. Mo-Comm Futures, Ltd.*, 233 Kan. 324, 662 P.2d 553 (1983). See, also, *York v. York*, 219 Neb. 883, 885, 367 N.W.2d 133, 135 (1985) (holding that "[i]t is quite apparent from the language of the section, 'to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States,' that it was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents").

The court in *Dirks* found that the connection between Carnival Cruise Lines' activities in Kansas and the plaintiff's cause of action was too tenuous, as the lawsuit was based on Carnival Cruise Lines' duty to exercise due care to its passengers. The court stated:

> Such a duty was not owed plaintiff until she became a passenger upon the ship in California. Consequently, Carnival's duty to plaintiff did not originate from its activities in Kansas. Plaintiff's injury was the ending in a fortuitous course of events that began with defendant's advertising of cruises and its selling of tickets. To find a causal connection between Carnival's activity and plaintiff's cause of action would require the court to indulge plaintiff with an untenable presumption of causation. Without a logical basis for finding that plaintiff's cause of action arose out of defendant's activities in Kansas, the court finds it lacks personal jurisdiction over defendant Carnival under the Kansas Long-Arm Statute.

*Dirks v. Carnival Cruise Lines*, 642 F. Supp. at 975.

Additionally, the *Dirks* court found that the notions of fair play and substantial justice required by *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), to exercise personal jurisdiction would be offended if jurisdiction was found in Kansas, as it was not reasonable for Carnival Cruise Lines to anticipate that as a result of advertising in Kansas, it would be subjected to suit in Kansas for a tort occurring on its ship while crusing in the ocean. Additional cases requiring a causal connection or relationship when advertising is the only contact with the forum are collected in 1 Robert C. Casad, Jurisdiction in Civil Actions § 4.02[1][a][ix]

(2d ed. 1991).

Wendy and Eric maintain that their injuries arose out of and are related to activity in Nebraska. In support thereof, the plaintiffs cite the case of *S. R. v. City of Fairmont*, 167 W. Va. 880, 280 S.E.2d 712 (1981). In that case, a West Virginia plaintiff went to Pennsylvania to obtain an abortion, but the defendant failed to remove all of the fetal parts. Upon returning to West Virginia, the plaintiff became ill as a result of the incomplete abortion. The West Virginia court did not specifically consider whether the injury arose out of or was related to the defendant's activity in the forum. However, the court concluded that part of the negligence of the defendant was allowing the plaintiff to return to West Virginia without making arrangements for proper postoperative care for her. The court stated that the damages occurred in West Virginia, although the negligent medical procedure occurred in Pennsylvania. One of the principal points made by the court was that the plaintiff needed to be able to sue the Pennsylvania doctor in West Virginia in order to join that doctor as a party defendant with a West Virginia hospital which treated her after she had returned to West Virginia. With the emphasis on this point, we find that the case provides little support for Wendy and Eric's position.

Wendy and Eric also rely upon *Woodward v Keenan*, 79 Mich. App. 543, 261 N.W.2d 80 (1977). In that case, a Michigan court concluded that medical services rendered in the State of Indiana to a resident of Michigan were not an adequate basis for the Michigan court to exercise jurisdiction over the Indiana doctor. However, the court wrote considerable dicta to the effect that if a nonresident physician were to advertise or encourage a significant number of Michigan residents to seek medical services outside the state, the result would be different. The Michigan court, however, did not state whether it was considering general or specific jurisdiction, as the case came down before that distinction was generally understood. Thus, *Woodward* is of little assistance to us.

Wendy and Eric also rely on *Murante v. Pedro Land, Inc.*, 761 F. Supp. 786 (S.D. Fla. 1991). In that case, South Carolina residents were regularly selling fireworks along an Interstate

highway in South Carolina. The plaintiff purchased fireworks from a stand there and returned home to Florida, where the fireworks exploded, causing injury. The federal court concluded that Florida had jurisdiction under its long-arm statute. However, since the case involved a situation in which the injury clearly occurred in the forum state, it is obviously factually distinguishable from the instant case.

The U.S. Supreme Court has used the terms "arising out of" and "related to," but has not seen fit to define or distinguish those terms. We obviously hesitate to attempt to draw precise bright lines, which higher courts have heretofore not drawn. However, we do conclude that for specific jurisdiction to exist, the contacts with the forum must be something other than activity of the type which, if it were only greater or more pervasive, would establish general jurisdiction, unless the matter is like *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (Florida suit on a contact sought out and made in Florida by Michigan residents). In other words, a plaintiff does not establish specific jurisdiction by attempting to establish the continuous and systematic activities needed for general jurisdiction, and failing. There still must be a showing of a greater relationship between the injury and the defendant's in-forum activities than is present here, although this is not to say that each element of proximate cause as defined in NJI2d Civ. 3.41 must be present.

Wendy's and Eric's injuries, allegedly caused by negligent operation and maintenance of the amusement ride in Missouri, are not sufficiently connected to the advertising so as to overcome the constraints imposed upon Nebraska's exercise of personal jurisdiction by the Due Process Clause of the 14th Amendment. Finding no basis for either general or specific jurisdiction, we affirm.

AFFIRMED.