Nancy L. GRAY and Sterling
H. Gray, Jr., Plaintiffs,

v.

LEWIS & CLARK EXPEDITIONS, INC.,
a Wyoming Corporation, Defendant.

No. 4:97CV3231.

United States District Court,
D. Nebraska.

July 27, 1998.

Allan J. Eurek, Allan J. Eurek, P.C., Lincoln, NE, for Plaintiffs.

Kelly K. Brandon, Sodoro, Daly & Sodoro, Omaha, NE, for Defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Pending before the court is a motion by Defendant to dismiss this action for lack of personal jurisdiction.[1] (Filing 3.) Plaintiffs request that if the motion is granted the matter be transferred to a federal court with proper jurisdiction. The court will grant Defendant's motion and direct the clerk of this court to transfer the action to the United States District Court for the District of Wyoming pursuant to 28 U.S.C. § 1631.

### I. Facts

Plaintiffs Nancy and Sterling Gray contend that as a result of Defendant's negligence and the negligence of Defendant's employee, Nancy Gray was injured during a white-river rafting trip gone awry. Defendant Lewis & Clark Expeditions, Inc., a Wyoming corporation, argues Nebraska lacks personal jurisdiction over it. In a sworn affidavit, Donald Perkins, sole shareholder of the corporation when it was in existence, testified Lewis &

Clark was never registered to transact business in this state; never possessed an interest in real property in Nebraska; never maintained any office, telephone, or agent in Nebraska; never solicited any business, nor conducted any personal business in Nebraska; never derived substantial revenue from goods used or consumed, or services rendered in Nebraska; and never contracted to supply services or goods in Nebraska. (Filing 4, Ex. 1.)

Plaintiffs reserved space on a Lewis & Clark raft ride while planning a vacation that would take them near the Grand Tetons. Nancy Gray said she contacted the Wyoming Tourist Office to inquire about rafting expeditions in the area. She subsequently received Defendant's brochure in the mail, although she does not know exactly who sent it. (Pls.' Br. at 1.) She then called Lewis & Clark's toll-free 800 number and made reservations with a credit card. She contends an agent of Lewis & Clark told her the company followed a no-cancellation policy, which meant her card would be charged whether or not Plaintiffs appeared at the scheduled time.

Plaintiffs produced evidence showing Lewis & Clark placed ads in the *Trailer Life Campground/RV Park & Services Directory* (Filing 19, Ex. 2), a publication marketed and sold nationwide, including, to an unknown extent, in Nebraska. (Filing 18, Ex. 5.) However, Nancy Gray testified by affidavit that she could not recall whether she saw the advertisements prior to booking the rafting trip by phone. (Filing 10, Ex. 3.)

### II. Discussion

#### A. Right to object preserved

■ Plaintiffs first argue Defendant waived the right to object on personal jurisdiction grounds by failing to raise the issue within the 20-day time limit specified in Fed. R.Civ.P. 12(a). A copy of Plaintiffs' complaint was delivered to Defendant via certified mail on July 16, 1997. According to an affidavit filed by Plaintiffs' attorney, lawyers for both sides spoke on August 19, 1997—already outside the 20-day limit—and agreed that if Defendant answered the complaint by September 5, 1997, Plaintiffs would not seek

---

1. Subsequent to the filing of Defendant's motion to dismiss, the parties were granted leave to

conduct discovery and submit additional briefing on the jurisdiction issue. (Filings 14 and 26.)

a default judgment. (Filing 8.) Defendant filed its motion to dismiss on September 5, 1997. Plaintiffs do not contend Defendant is in default, but only that Defendant cannot raise the personal jurisdiction issue because the topic was not mentioned during the August 19 conversation.

This enlargement of time agreed to by both parties is based on a misunderstanding of the Rules. Under Fed.R.Civ.P. 6(b), approval of the court is necessary to make effective a stipulation extending the time in which to answer or otherwise move in response to the complaint. *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 130 F.2d 185, 187 (3d Cir.1942). Professional comity having the effect of lengthening lawsuits cannot be allowed to interfere with the overall purpose of the Rules, namely the just, speedy, and inexpensive determination of actions. *Id.* Moreover, Nebraska Local Rule 6.1 states that an enlargement of time to answer or otherwise move in response to a complaint may be granted by an order signed by the Clerk. Because court approval of this enlargement of time was neither requested nor granted, the motion in question was filed out of time. Defendant therefore would be in default following the formality of Plaintiffs filing such an application to the court. Fed. R.Civ.P. 55(b)(2).

However, I note that in such an event Defendant could apply for relief from the default judgment under Fed.R.Civ.P. 55(c) and 60(b). Taking into account Plaintiffs' agreement to the invalid stipulation and Defendant's reliance upon it, the court would set aside the default and allow Defendant to once more answer the complaint with its motion to dismiss. Following these time-consuming proceedings, the same personal jurisdiction issues would again be before the court. Rather than force these additional steps upon the parties, the court, in the interest of expediency, retroactively grants leave to Defendant to file its motion to dismiss out of time.

Any effective extension of time granted to a defendant to file an answer, such as this

extension, preserves the right to move under 12(b). 5a Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1361, at 449 (1990). In the present case, Lewis· & Clark's first responsive pleading contained the 12(b) motion, so the personal jurisdiction objection was not waived. *Foss v. Klapka*, 95 F.R.D. 521, 523 (E.D.Pa.1982) (filing a motion to dismiss two days late does not constitute a waiver so long as defendant's first response raised the issue of personal jurisdiction).

**B. Plaintiff need not allege personal jurisdiction in the complaint**

Defendant argues Plaintiffs' complaint ought to be dismissed simply because it does not specifically allege Defendant falls under the personal jurisdiction of this court. Fed.R.Civ.P. 8(a)(1) tells us pleadings require only "a short and plain statement of the grounds upon which the court's jurisdiction depends." Courts interpret this Rule as relating to subject-matter jurisdiction rather than personal jurisdiction. *Dirks v. Carnival Cruise Lines*, 642 F.Supp. 971, 973 (D.Kan. 1986). Wright and Miller agree that the "complaint need not allege ... the basis for jurisdiction over defendant's person or property." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1206, at 96 (1990). Because Plaintiffs adequately plead the diverse citizenship of the parties, their complaint will not be dismissed on these grounds.

**C. Standard of review for personal jurisdiction questions**

Regarding the merits of Defendant's motion to dismiss for lack of personal jurisdiction, the court must ask (1) whether the Nebraska long-arm statute is satisfied, and (2) whether the exercise of jurisdiction over this defendant will violate the Due Process Clause of the Fourteenth Amendment. *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 696–97 (8th Cir.1995), *cert. denied*, 516 U.S. 1184, 116 S.Ct. 1288, 134 L.Ed.2d 232 (1996).

Nebraska's long-arm statute, Neb.Rev. Stat. § 25–536 (Michie 1995)[2], has been in-

---

**2.** The Nebraska long-arm statute provides:
A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:
    (a) Transacting any business in this state;

terpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution. *Wagner v. Unicord Corp.*, 247 Neb. 217, 221, 526 N.W.2d 74, 77 (1995). Thus, constitutional limits will dictate whether jurisdiction over Defendant is proper.

In order to exercise personal jurisdiction over a nonresident defendant, due process requires the defendant have "minimum contacts" with the forum state such that maintenance of a suit against that defendant does not offend " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The nonresident defendant's conduct and connection with the forum state must· be such that "he should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980), and it is essential that " 'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, such contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "fair play and substantial justice." *Id.* at 476, 105 S.Ct. 2174. The factors, as articulated by the Eighth Circuit Court of Appeals, are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir.1996).

With regard to the third factor, if specific jurisdiction is asserted, as it is here, "due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." *Id.* at 1103. The fourth and fifth factors are of secondary importance and not determinative. *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). In applying these factors, the central inquiry is the " 'relationship among the defendant,· the forum, and the litigation.' " *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).

Plaintiffs need only make a prima facie showing of personal jurisdiction over defendants in order to survive a defendant's motion to dismiss for lack of personal jurisdiction. *Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE),·Ltd.*, 89 F.3d 519, 522 (8th Cir.1996). Further, this court must view the evidence in the light most favorable to Plaintiffs and must resolve all factual conflicts in their favor. *Id.*

### D. General jurisdiction

Under the doctrine of general jurisdiction,· Plaintiffs need not allege a cause of action related to Defendant's contacts with the forum state provided those contacts are continuous and systematic. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416,

---

.(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time · of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United · States.

Neb.Rev.Stat. § 25–536 (Michie 1995).

104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Such is not the case here.

The *Helicopteros* Court found that sending a corporate executive to the forum state of Texas for contract negotiations, accepting checks drawn on a Texas bank, purchasing equipment from a Texas company for substantial sums, and dispatching personnel to Texas for training did not amount to continuous and systematic contact. In *Dunham, By and Through Dunham v. Hunt Midwest Entertainment, Inc.*, 2 Neb.App. 969, 520 N.W.2d 216 (1994), the Nebraska Court of Appeals examined the relationship of Missouri's Worlds of Fun amusement park to Nebraska and determined local radio and television ads aimed directly at Nebraskans amounted to fewer contacts than those found inadequate in *Helicopteros*. *Dunham*, 520 N.W.2d at 222.

■ The small amount of print advertising indirectly carried out by Lewis & Clark in Nebraska amounts to far less than the contacts alleged in *Dunham* or *Helicopteros*, cases where substantial funds were spent in the forum state. Advertising in national publications and soliciting business from the public at large is not enough to create a basis for general jurisdiction in a particular state. *Jenson v. R.L.K. & Co.*, 534 N.W.2d 719, 723 (Minn.App.1995).

Therefore, from the standpoint of general jurisdiction, personal jurisdiction over Defendant in Nebraska is lacking.

### E. Specific jurisdiction

■ Plaintiffs contend Nebraska still holds specific jurisdiction over Defendant because their claims arise out of or are directly related to Lewis & Clark's purposeful contacts with the state. The facts do not support this argument.

#### 1. Purposeful availment requirement

Although a nonresident's contacts with a forum state under specific jurisdiction need not be so continuous and systematic as under a general jurisdiction theory, the "purposeful availment" requirement remains. *Burger King, supra*. "Purposeful availment" means the defendant's connection with the forum state must be deliberate and substantial, involving significant activities or continuing obligations. The connection cannot be random, fortuitous, attenuated, or the result of another party's unilateral activities. 471 U.S. at 475, 105 S.Ct. 2174.

The Nebraska Supreme Court adopted this standard in *Williams v. Gould*, 232 Neb. 862, 878, 443 N.W.2d 577, 588 (1989):

> According to the *Burger King* analysis, whether a Nebraska court has personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with Nebraska are the result of unilateral acts performed by someone other than the defendant, or whether the defendant himself acted in a manner which creates substantial connections with Nebraska, resulting in the defendant's "purposeful availment" of the benefits and protections of Nebraska law.

*Id.*

In the present case, the only activities by Defendant that potentially could be deemed as directed at Nebraska are: advertising in camping publications that make their way to the state, maintaining an 800 number available to Nebraskans, and accepting Nancy Gray's reservation and credit card number over the phone during a call she initiated.

Advertising in national directories and publishing 800 numbers does not indicate an intent to serve a particular market or area, and demonstrates nothing about whether such business was actually generated. Without evidence of additional sales or facts showing Defendant was the aggressor in the transaction, this lone contact initiated by Nancy Gray must be characterized as an isolated one that does not show purposeful availment of the Nebraska market. *Welsh v. Takekawa Iron Works Co., Ltd.*, 529 N.W.2d 471, 475 (Minn.App.1995) (single proven in-state sale is not sufficient to establish jurisdiction over nonresident manufacturer). The present case is distinguishable from the finding of purposeful availment in *Dunham*, where evidence showed the defendant specifically targeted the Omaha, Nebraska, market by advertising on local broadcast stations. *Dunham*, 2 Neb.App. at 970, 520 N.W.2d at 219.

Plaintiffs argue Lewis & Clark not only advertised and accepted Nancy Gray's tele-

phone call, but entered into a contract. Assuming a contract did exist, it would not be enough to grant Nebraska jurisdiction over Defendant. First, the "contract" was to be performed in Wyoming. "[A] nonresident defendant ... may be constitutionally subjected to suit in the state **where the contract is to be performed.**" *Williams,* 232 Neb. at 879, 443 N.W.2d at 588 (emphasis added). There is no indication that Nebraska played any further role in the relationship between these parties. "The fact that defendant was involved in a business transaction with a Nebraska resident is in itself insufficient to justify the assertion of jurisdiction over the defendant." *Peterson v. Crown Fin. Corp.,* 435 F.Supp. 901, 903 (D.Neb. 1977).

Plaintiffs cite *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) for the proposition that a single contract can suffice to provide "minimum contacts." However, case law holds that *"McGee* should be limited in its application to those special cases where the state has an exceptional interest" that is not present here. *Gendler v. General Growth Properties,* 461 F.Supp. 434, 437 n. 2 (D.Neb. 1978); *see also Iowa Elec. Light and Power Co. v. Atlas Corp.,* 603 F.2d 1301, 1304–05 (8th Cir.1979) (rejecting plaintiff's reliance on *McGee* due to the lack of a "particularized interest" on the part of the state).

Although some of the cases cited above consider advertising or contracts independent of the other, even when combined the small amount of advertising and single raft reservation evidenced in this case do not indicate an intent by Defendant to purposefully avail itself of the protections of Nebraska laws. Effectively subjecting local businesses to suit anywhere in the country simply for placing diminutive ads in national niche publications, maintaining 800 numbers, and arranging for services to be performed exclusively in their own states does not fall under the notion of traditional fair play and substantial justice.

### 2. Claim does not arise out of Defendant's in-state activities

Even if the alleged contract and the camping directory advertisements were enough to show that Lewis & Clark purposefully directed activities at Nebraska, the exercise of personal jurisdiction over Defendant would fail because Plaintiffs' injuries do not "arise out of" or relate to those activities.

Although "arise out of" is not a well-defined phrase, a number of cases have held that causes of action involving negligence at tourist sites do not arise out of enticing advertisements directed at the forum state. *Dunham,* 2 Neb.App. at 982–986, 520 N.W.2d at 225–227; *Pearrow v. National Life & Acc. Ins. Co.,* 703 F.2d 1067, 1069 (8th Cir.1983).

Likewise, Plaintiffs' cause of action also does not arise out of the telephone agreement. A "cause of action" is defined as a situation or state of facts that entitle a party to bring an action and to seek judicial relief. *Jenson,* 534 N.W.2d at 724 (quoting *Rhodes v. Jones,* 351 F.2d 884, 886 (8th Cir.1965), *cert. denied,* 383 U.S. 919, 86 S.Ct. 914, 15 L.Ed.2d 673 (1966)). In this case, facts regarding the Nebraska telephone reservation would not be required for Plaintiffs to prevail in their negligence suit against the rafting company. The Grays' action is based on a potential duty of Defendant to safely guide those who ride the waters on Lewis & Clark rafts. If this duty exists, it would arise when Plaintiffs boarded the rafts, not when one of them picked up a phone hundreds of miles distant and days earlier. To find a causal connection between Defendant's Nebraska activity and Plaintiffs' cause of action would "require the court to indulge plaintiff with an untenable presumption of causation." *Dirks,* 642 F.Supp. at 975.

Because Lewis & Clark did not direct sufficient activity at Nebraska to satisfy due process concerns, and because Plaintiffs' cause of action is not related to what contacts did exist, Nebraska lacks personal jurisdiction in this case.

### III. Transfer to Wyoming district court

Plaintiffs requested in their brief that in the event personal jurisdiction was found lacking in Nebraska, the case be transferred to the District of Wyoming. Covering all the bases, Plaintiffs mention 28 U.S.C. § 1404(a), 28 U.S.C. § 1631, and *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), a case dealing with 28 U.S.C.

§ 1406(a) decided before the enactment of § 1631. Section 1631, the federal transfer statute, provides in relevant part:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred.

 Courts have interpreted the plain language of § 1631 to apply to cases, such as this one, where the transferor court finds personal jurisdiction over the defendant lacking. *Med–Tec, Inc. v. Kostich*, 980 F.Supp. 1315, 1331–32 (N.D.Iowa 1997); *North American Financial Corp. v. Amgrar Gesellschaft fur Farmlagen, mbH*, 702 F.Supp. 1435, 1439 (D.Minn.1989). As with transfers for improper venue, the decision to transfer under § 1631 lies within the discretion of the district court. *Gunn v. United States Dep't of Agric.*, 118 F.3d 1233, 1240 (8th Cir.1997). The court must find that the transfer will be in the interest of justice, and that, had the case been originally filed in the proper court, the filing would have been timely and jurisdictionally proper in that court. *Id.*

Plaintiffs state that this action was filed in Nebraska three days before the Wyoming statute of limitations on tort actions would bar their claim. (Pls.' Br. at 3.) Because § 1631 allows the filing date of the action to relate back to the date it was filed in this district, I find it in the interest of justice to order the transfer. Jurisdiction presumably would be proper in the state where Defendant was a citizen and where the events alleged in the complaint took place.

### IV. Conclusion

Plaintiffs have not established a prima facie case that this court may exercise personal jurisdiction over Defendant under the Due Process Clause. However, the interest of justice requires that this case be transferred to a proper forum.

Accordingly,

IT IS ORDERED:

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (filing 3) is granted;

2. The Clerk of the United States District Court for the District of Nebraska is directed to transfer this action to the United States District Court for the District of Wyoming; and

3. The Clerk is directed to close this case for statistical purposes.