NORWEST BANK NEBRASKA, N.A., TRUSTEE, APPELLEE, V.
BELLEVUE BRIDGE COMMISSION, A PUBLIC BODY CORPORATE
AND POLITIC, APPELLANT.
585 N.W. 2d 505

Filed October 13, 1998. No. A-97-162.

Thomas Blount, of Bertolini, Schroeder & Blount, for appellant.

Gregory A. Pivovar for appellee.

SIEVERS and MUES, Judges, and HOWARD, District Judge, Retired.

SIEVERS, Judge.

## INTRODUCTION

In this case, we explore fundamental jurisdictional issues, both personal and subject matter, which are involved in receiverships, and due to the district court's lack of jurisdiction, we vacate its order appointing a receiver.

## BACKGROUND

On October 20, 1950, three men met at the city hall in Bellevue, Nebraska, and resolved to build a bridge. The three men composed the Bellevue Bridge Commission, and the bridge was to span the Missouri River between Bellevue and Mills County, Iowa. In accordance with a written resolution passed by the commission that day, the bridge was built and is commonly known today as the Bellevue Bridge.

The commission sold 2,800 bonds in order to raise money for the project. At $1,000 per bond, the money raised by the commission was enough to cover the estimated $2.8 million cost of building the bridge and readying it for operation. The bonds had a par value of $1,000, with interest coupons attached. Interest was to accrue at 4 percent annually, and the interest coupons could be cashed in every 6 months, on November 1 and May 1 of each year. The bonds were to mature in 1980. However, the

commission had the option of redeeming some or all of the bonds earlier. According to the resolution, if the bonds were redeemed early, the commission would pay the par value of the bond and accrued interest to the bondholder, plus a "premium" of 4 percent of the par value.

The interest and principal on the bonds were to be paid from money earned operating the bridge. This was to be the sole source of payment, and the commission made clear in the text of the resolution that no governmental body would be responsible for paying on the bonds. The commission was to levy "tolls, fares or other charges" for the use of the bridge, in order to earn the money to pay the bond investors. The money collected was to be deposited in a group of accounts or funds, with names like the "Bridge Revenue Fund," the "Sinking Fund," and the "Contingency Reserve Fund." Provisions were made to ensure that the operating costs of the bridge were paid and that adequate reserves were maintained. Additionally, provision was made for the method of paying bond investors. A portion of the resolution of October 20, 1950, provided:

> In the event that default shall be made in the payment of the interest on or the principal of any of the Bonds . . . and in the further event that any such default shall continue for a period of thirty days, any holder of such Bonds . . . shall be entitled as of right to the appointment of a receiver of said Bridge . . . .

On January 17, 1997, Norwest Bank Nebraska, N.A. (Norwest), filed a petition in the district court for Sarpy County. The petition alleged that Norwest was the owner of 762 of the bonds issued pursuant to the 1950 resolution and that the commission had defaulted for more than 30 days in paying interest and principal. Norwest requested that Jeffrey Renner, secretary of the commission, be appointed as receiver. No other relief was requested. There was no praecipe for summons filed as part of the petition, nor was there a certificate of service. On that same day, Norwest hand-delivered a separate pleading, entitled "Notice of Application for Appointment of Receiver," to Eugene Farley, the chairman of the commission, and to Renner. The notice informed both men that a hearing on the application for appointment of a receiver would be held January 24, in the

district court for Sarpy County. At that hearing, the court appointed Renner as receiver. The court's order of appointment of receiver, dated January 24, 1997, states that oral evidence and exhibits were received. That order does not indicate the presence at the hearing of any commission member or attorney representing the commission.

On February 12, 1997, the commission filed its notice of intention to appeal that order to this court. The appropriate fees were timely paid to the district court. The commission also filed a "Praecipe for Transcript" and a "Praecipe for Bill of Exceptions." Included in the praecipe for transcript was a request that the district court clerk produce any praecipe for summons, summons, and return of summons filed by Norwest in the district court. The transcript prepared and filed by the district court clerk does not include any of these three items. We have no bill of exceptions to consult on appeal because no recording was made of the January 24 hearing.

On May 15, 1997, Norwest filed a motion for order nunc pro tunc. A hearing on the motion was held May 23, and an order nunc pro tunc was entered on June 6. The order nunc pro tunc revised the court's order of January 24 regarding what transpired at the January 24 hearing. In the order nunc pro tunc, the court stated that Farley and Renner had been present at the January 24 hearing. The order nunc pro tunc further stated that at the January 24 hearing, the court "acknowledged" the "presence in court" of Farley and Renner, and "made inquiry as to whether there were any objections and was advised that there were none." It is unclear from the order nunc pro tunc what the topic of discussion was at the time Farley and Renner supposedly had no objections. The order nunc pro tunc also stated that there was a "dialogue" among the participants at the hearing. No further notice of appeal was filed, and the matter is before this court on the notice of appeal filed February 12.

## ASSIGNMENTS OF ERROR

The commission assigns the following errors in this appeal: (1) The district court erred in exercising personal jurisdiction over the defendant and over the subject matter of this action when there had been no issuance or service of summons upon the commission; (2) the court erred in entering judgment when

the commission had not been served with summons or given the opportunity to appear and answer as required by law; (3) the court erred in failing to require a verbatim record of the proceedings to preserve the oral evidence and exhibits it received and considered in making its determination; (4) the court erred in failing to prepare, certify, and deliver to the clerk of the district court a bill of exceptions; and (5) the decision of the trial court is not supported by the evidence and is contrary to law.

## STANDARD OF REVIEW

Without a complete record, an appellate court cannot make a de novo review. *Latenser v. Intercessors of the Lamb, Inc.*, 245 Neb. 337, 513 N.W.2d 281 (1994). Absent a complete bill of exceptions, the only issue before the court on appeal is whether the pleadings are sufficient to support the judgment. *Id.* Subject matter jurisdiction is a question of law for the court. *Hoshor v. Hoshor*, 254 Neb. 743, 580 N.W.2d 516 (1998).

## ANALYSIS

*Record.*

In reviewing the decision of a lower court, an appellate court considers only evidence included within the record. *State v. Price*, 252 Neb. 365, 562 N.W.2d 340 (1997). Meaningful appellate review requires a record that elucidates the factors contributing to the lower court judge's decision. *State v. Bush*, 254 Neb. 260, 576 N.W.2d 177 (1998); *Van Ackeren v. Nebraska Bd. of Parole*, 251 Neb. 477, 558 N.W.2d 48 (1997). In this case, there is no record of what transpired at the January 24, 1997, hearing during which the district court appointed a receiver. Meaningful review therefore proves difficult.

We note that the absence of a bill of exceptions from the district court hearing is not the commission's fault. The commission filed a praecipe for bill of exceptions on February 12, 1997. At that point, the responsibility for producing the record of a judicial proceeding shifts to the court. *Gerdes v. Klindt's, Inc.*, 247 Neb. 138, 525 N.W.2d 219 (1995); *Holman v. Papio-Missouri River Nat. Resources Dist.*, 246 Neb. 787, 523 N.W.2d 510 (1994).

> "[I]t is not the trial court's prerogative to decide what the trial record shall be. Upon request, a litigant is entitled to

a verbatim record of anything and everything which is said by anyone in the course of judicial proceedings; it is the duty of the court reporter to make such a record, and it is the obligation of the trial court to see to it that the reporter accurately fulfills that duty."

*Gerdes*, 247 Neb. at 140-41, 525 N.W.2d at 221. See *Holman, supra.*

■ Here, we have no bill of exceptions establishing what happened at the January 24, 1997, hearing. Additionally, we do not consider the order nunc pro tunc entered by the court on June 6, though for a different reason. The order nunc pro tunc was entered over 3 months after the commission filed its notice of appeal. Its entry violated the well-established rule that after an appeal has been perfected to an appellate court, the lower courts are divested of subject matter jurisdiction over that case. Neb. Rev. Stat. § 25-1912(3) (Reissue 1995); *Billups v. Scott*, 253 Neb. 293, 571 N.W.2d 607 (1997). The commission's appeal was properly perfected, in that the commission timely filed its notice of intention to appeal and paid the costs associated with such notice. § 25-1912(3). Therefore, the district court order nunc pro tunc is not considered by us, nor is it effective for any purpose, as the district court clearly lacked jurisdiction to enter the order.

*Personal Jurisdiction.*

■ The commission's first assigned error is that it was not subject to the personal jurisdiction of the court, because the commission was never served with a copy of Norwest's petition. Norwest contends that the district court acquired jurisdiction through a general appearance by the commission at the January 24 hearing. One who invokes the power of the court on an issue other than the court's jurisdiction over one's person makes a general appearance so as to confer on the court personal jurisdiction over that person. *Nebraska Methodist Health Sys. v. Dept. of Health*, 249 Neb. 405, 543 N.W.2d 466 (1996).

However, Norwest's argument rests solely on the statements in the order nunc pro tunc that Farley and Renner of the commission were present at the January 24 hearing. Without the order nunc pro tunc and without any bill of exceptions, there is

no evidence of any appearance by the commission, let alone a general appearance, where the commission sought any action by the court. Thus, the court did not have personal jurisdiction over the commission unless the commission was properly served with process.

■ Neb. Rev. Stat. § 25-501 (Reissue 1995) provides: "A civil action must be commenced by filing of a petition in the office of the clerk of a proper court." Neb. Rev. Stat. § 25-502.01 (Reissue 1995) provides: "The plaintiff shall file with the clerk of the court a praecipe for summons stating the name and address of each party to be served and the manner of service for each party. Upon written request of the plaintiff, separate or additional summonses shall be issued."

■ Neb. Rev. Stat. § 25-503.01 (Reissue 1995) provides, in part:

> The summons shall be directed to the defendant or defendants, and contain the names of the parties and the name and address of the plaintiff's attorney, if any, otherwise the address of the plaintiff. It shall notify defendant that in order to defend the lawsuit an appropriate written response must be filed with the court within thirty days after service, and that upon failure to do so the court may enter judgment for the relief demanded in the petition.

In this case, the petition did not include a praecipe for summons, there was not a separate praecipe, nor was there any other indicia that the petition was served upon the commission.

■ The "Notice of Application for Appointment of Receiver," a pleading separate from the petition, did contain a certificate of service, indicating that it was served upon the chairman of the commission by hand delivery. However, the statutes governing appointment of receivers in Nebraska specifically state that appointment of a receiver is to occur within the context of an already existing case. Neb. Rev. Stat. § 25-1082 (Reissue 1995). "No receiver shall be appointed except in a suit actually commenced and pending . . . ." *Id.* See, also, *Gentsch, Inc. v. Burnett*, 173 Neb. 820, 115 N.W.2d 446 (1962). In *Gentsch, Inc.*, the appointment of a receiver was reversed on appeal because "[c]onditions of consequence here are that a suit must be actually commenced . . . . Of primary significance

within the meaning of the statute, there was no action pending which would extend to the court jurisdiction to appoint a receiver." *Id.* at 825, 115 N.W.2d at 449.

In this case, Norwest's own application seems to tacitly recognize this requirement. It states, "This application is made by the applicant's petition heretofore filed herein with all exhibits attached . . . ." Thus, Norwest seems to acknowledge that an appointment of receiver is dependent initially on the existence of a properly commenced and underlying case. Norwest did not accomplish service of its lawsuit on the commission, thereby putting the cart decidedly before the horse. Based on the pleadings, and in the absence of a bill of exceptions, the district court did not acquire personal jurisdiction over the commission.

*Subject Matter Jurisdiction.*

 The commission also contends that the district court had no subject matter jurisdiction. Subject matter jurisdiction is a court's power to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject involved in the action before the court. *Rice v. Adam*, 254 Neb. 219, 575 N.W.2d 399 (1998). A ruling made in the absence of subject matter jurisdiction is a nullity. *In re Estate of Andersen*, 253 Neb. 748, 572 N.W.2d 93 (1998).

 In this case, the subject is the appointment of a receiver. Nebraska statutes are clear that "[n]o receiver shall be appointed except in a suit actually commenced and pending . . . ." § 25-1082. See, also, *Gentsch, Inc., supra*; *Vila v. Grand Island Electric Light, Ice & Cold Storage Co.*, 68 Neb. 222, 94 N.W. 136 (1903). We have already discussed *Gentsch, Inc.*, above. The *Vila* case further explains what is required of a lawsuit before a receiver may be appointed within that lawsuit. "Moreover, the suit which must be 'actually commenced and pending' as a condition precedent to an appointment of a receiver, must be one in which the major relief sought is independent of the receivership. The latter is a purely ancillary remedy." *Vila*, 68 Neb. at 225-26, 94 N.W. at 138.

In this case, Norwest's petition did not seek any relief independent of the appointment of a receiver. Norwest's request for

relief did not seek judgment for the amount allegedly due it in interest and principal, nor did it even mention any amount anywhere in its petition. There is nothing "ancillary" about Norwest's application for appointment of a receiver, and there was no underlying action in which the application was brought.

Norwest states in its petition that it is "entitled to the appointment of a receiver as a matter of right in accordance with the terms of the Resolution which established the rights, duties and benefits of the parties." However, parties may not stipulate to subject matter jurisdiction. *Rice, supra.* "Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties." *Id.* at 225, 575 N.W.2d at 404. Further, the appointment of a receiver is a matter of discretion for the court. *Lackey v. Yekel*, 113 Neb. 382, 203 N.W. 542 (1925). This discretion is equitable in nature. *O'Neill Production Credit Assn. v. Putnam Ranches, Inc.*, 198 Neb. 145, 251 N.W.2d 884 (1977). In *Lackey*, the parties contractually stipulated to the appointment of a receiver in the event of nonpayment on a real estate mortgage. The Supreme Court held:

> The above provision for the appointment of a receiver neither adds to, nor detracts from, what the contract would be if such provision were omitted. Such a provision is simply declaratory of that which the law would imply without it. Whether or not a receiver should be appointed is a matter resting in the . . . discretion of the court under the conditions shown at the trial, and within the statutory limitations.

*Lackey*, 113 Neb. at 383, 203 N.W. at 542. In this case, then, the resolution drafted by the commission in 1950 does not operate to create subject matter jurisdiction when it does not otherwise exist.

After examining the pleadings, given the absence of a bill of exceptions, we conclude that the district court lacked subject matter jurisdiction to appoint a receiver. Norwest sought the ancillary remedy of receivership, but there was no underlying action in which some relief besides the appointment of a receiver was sought.

## CONCLUSION

The district court lacked personal jurisdiction over the commission as well as being without subject matter jurisdiction. Because of this pending appeal, it was also without jurisdiction to enter its order nunc pro tunc. We reverse and vacate the district court's order appointing a receiver.

REVERSED AND VACATED.