NATHANIEL ROBINSON, APPELLANT, V.
NABCO, INC., APPELLEE.
641 N.W.2d 401

Filed March 12, 2002.    No. A-00-1146.

Phillip G. Wright and Sean C. Bradley, of Quinn & Wright, for appellant.

Nora M. Kane, of Domina Law, P.C., for appellee.

IRWIN, Chief Judge, and SIEVERS and MOORE, Judges.

SIEVERS, Judge.

In this products liability action, the Douglas County District Court determined that Nebraska lacks personal jurisdiction over NABCO, Inc., a Michigan company which remanufactures electrical automotive parts. Nathaniel Robinson, a Nebraska citizen, alleged he was injured by a defective alternator in his car. Robinson alleged that he purchased the alternator from a Western Auto Supply Company (Western Auto) retail store in Omaha, which had received the alternator from Western Auto/Advanced Automotive Supply Company in Missouri, which purchased the alternator from NABCO. NABCO's special appearance challenged Nebraska's personal jurisdiction. The trial court sustained the special appearance and dismissed the action. Robinson appealed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Robinson bought a Sentry Gold alternator, a part remanufactured by NABCO, for his automobile in March 1996 from Western Auto. About 1 month later, Robinson was driving the vehicle when the "check engine" light alerted him to a problem. He stopped the automobile and opened the hood. The top of the battery flew off, striking him in the head. Robinson alleges that the incident occurred due to overcharging of the alternator, caused by defective manufacturing, and that as a result, he sustained significant acid burns and other injuries.

Robinson filed a petition in the Douglas County District Court against NABCO, a Michigan corporation, alleging that Nebraska has personal jurisdiction over NABCO pursuant to Neb. Rev. Stat. § 25-536 (Reissue 1995), the long-arm statute. He stated in his

petition that sufficient contacts exist because NABCO marketed, sold, and distributed the alternator in Nebraska. NABCO filed a special appearance pursuant to Neb. Rev. Stat. § 25-516.01 (Reissue 1995), objecting that the trial court did not have personal jurisdiction over it.

On June 22, 2000, the court held a hearing on NABCO's special appearance, and that bill of exceptions is in our record. Included therein is exhibit 1, the affidavit of Patrick E. Young, NABCO's director of product reliability. In an order entered June 30, the trial court found that "pursuant to *International Shoe Company v. Washington*, 326 US 310, 66 S Ct 154, 90 LEd 95 (1945), and its progeny, and *Neb Rev Stat* § 25-536," Nebraska lacked personal jurisdiction over NABCO.

Robinson filed an amended petition in which he added the allegation: "Defendant knowingly placed its product known as a Sentry Gold Alternator in the stream of commerce so that it would reach an ultimate consumer, such as the Plaintiff in the State of Nebraska." NABCO responded with another special appearance, which the trial court sustained, and the court dismissed the action with prejudice on October 12, 2000, citing only the reasoning we quoted above from its ruling on the first special appearance.

Robinson appealed and requested a record of the second special appearance hearing. However, our transcript includes a November 22, 2000, affidavit from the trial judge's reporter averring that "she made no record in connection with the case on September 21, 2000."

## II. ASSIGNMENTS OF ERROR

Robinson assigned two errors which he also argued and which we therefore consider: The trial court erred in failing to produce a record of the proceedings held on the second special appearance on September 21, 2000, and finding that Nebraska lacked personal jurisdiction over NABCO. See *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000) (appellate court considers only assignments of error which are both assigned and argued).

## III. STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law,

which requires an appellate court to reach a conclusion independent from the trial court's conclusion on the jurisdictional issue. *Castle Rose v. Philadelphia Bar & Grill*, 254 Neb. 299, 576 N.W.2d 192 (1998).

## IV. ANALYSIS

### 1. LACK OF BILL OF EXCEPTIONS FOR HEARING HELD SEPTEMBER 21, 2000

Robinson argues that it was the trial court's responsibility to ensure that all testimony or other oral proceedings were recorded by a court reporter. This statement is overly broad as explained by a close reading of the court rules quoted below. Robinson reasons that the court's failure to make a verbatim record of NABCO's special appearance on September 21, 2000, prevents this court from reviewing the trial court's decision, necessitating a remand for preparation of a record of the hearing. The request for a remand, given there is no showing that an evidentiary proceeding occurred on September 21, is inappropriate.

Neb. Ct. R. of Prac. 5A(1) (rev. 2000) provides: "The official court reporter shall in all instances make a verbatim record of *the evidence offered at trial or other evidentiary proceeding*, including but not limited to objections to any evidence and rulings thereon, oral motions, and stipulations by the parties. This record may not be waived." (Emphasis supplied.)

In *Norwest Bank Neb. v. Bellevue Bridge Comm.*, 7 Neb. App. 750, 585 N.W.2d 505 (1998), no bill of exceptions was made. In *Norwest Bank Neb.*, we quoted *Gerdes v. Klindt's, Inc.*, 247 Neb. 138, 525 N.W.2d 219 (1995), a case in which a trial court failed to make a transcript of an evidentiary hearing, for this proposition:

> " 'Upon request, a litigant is entitled to a verbatim record of anything and everything which is said by anyone in the course of judicial proceedings; it is the duty of the court reporter to make such a record, and it is the obligation of the trial court to see to it that the reporter accurately fulfills that duty.' "

*Norwest Bank Neb.*, 7 Neb. App. at 754-55, 585 N.W.2d at 509. See, also, *Jacob v. Schlichtman*, 8 Neb. App. 439, 594 N.W.2d 691 (1999) (upon proper request for bill of exceptions, preparation

thereof becomes internal court matter and it is court reporter's duty to fulfill request); *Lockenour v. Sculley*, 8 Neb. App. 254, 592 N.W.2d 161 (1999) (there can no longer be any dispute that it is trial court's responsibility to preserve and produce evidentiary record); *Sindelar v. Hanel Oil, Inc.*, 6 Neb. App. 349, 573 N.W.2d 782 (1998) (trial court's order showed that evidence was received at summary judgment hearing, but court reporter did not record proceedings, resulting in remand for failure of court official to perform duties).

Robinson appears not to appreciate that a different rule obtains depending on whether the proceeding is an evidentiary proceeding. The trial judge and his or her reporter must record the hearing if it is an evidentiary proceeding so that a bill of exceptions is available for appellate review of the evidence. See rule 5A(1). A hearing that does not include the offering of evidence need not be recorded, unless a party requests it. See rule 5A(2). These rules are simple and straightforward.

We have no indication that evidence was offered at the hearing on NABCO's special appearance held September 21, 2000. The court reporter's affidavit stating that no record of the special appearance was made, under the law as outlined above, compels an inference that not only was no evidence offered, but no party requested that the hearing be reported, even though no evidence was offered. No filing in the district court (made part of this record) from Robinson disputes the court reporter's affidavit, and in this regard, we note that our rules provide a procedure for the trial court to resolve, if the parties cannot agree, what shall be in the bill of exceptions. See rule 5B(5).

Moreover, rule 5B(3)c allows for the preparation of a bill of exceptions, if the court reporter cannot prepare it, under the direction, supervision, and certification of the trial court. We read this rule as applying only when there was an evidentiary hearing. The obvious problem here is that Robinson did not avail himself of this rule, did not make any showing that there had in fact been evidence offered on September 21, 2000, making a bill of exceptions mandatory, or make a request that this hearing be recorded—also making the recording of a nonevidentiary proceeding mandatory. Absent such showing, we presume compliance with the law by the trial court and the court

reporter—meaning that there was no evidence adduced on September 21 and no request that a nonevidentiary proceeding be recorded. As a result, we have no basis to order a remand to prepare a record that Robinson has not shown should exist. This assignment of error and suggestion for remand lacks merit.

### 2. DOES RECORD SHOW NEBRASKA HAS PERSONAL JURISDICTION OVER NABCO?

Failing a remand, Robinson contends that the record, which includes his amended petition and Young's affidavit, is sufficient to show that the trial court erred by finding that Nebraska lacked personal jurisdiction over NABCO. Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions. *Higgins v. Rausch Herefords*, 9 Neb. App. 212, 609 N.W.2d 712 (2000). Before filing any other pleading or motion, one may file a special appearance under § 25-516.01 for the sole purpose of objecting to a court's assertion or the exercise of personal jurisdiction over the objector. *Id.*

The trial court's October 12, 2000, order finding that Nebraska lacked personal jurisdiction over NABCO is a final, appealable order because it dismissed Robinson's action with prejudice. An order is final and appealable if it dismisses an action with prejudice. See *Busboom v. Gregory*, 179 Neb. 254, 137 N.W.2d 825 (1965) (when special appearance is sustained, it becomes final order when plaintiff elects to stand on it and brings about dismissal).

Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, if the long-arm statute is satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process. *Holste v. Burlington Northern RR. Co.*, 256 Neb. 713, 592 N.W.2d 894 (1999); *Higgins v. Rausch Herefords, supra.*

Nebraska's long-arm statute, § 25-536, provides in pertinent part:

A court may exercise personal jurisdiction over a person:
(1) Who acts directly or by an agent, as to a cause of action arising from the person:

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

. . . .

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

The Due Process Clause of the 14th Amendment operates to limit the power of a state to assert in personam jurisdiction over a nonresident defendant. *Higgins v. Rausch Herefords, supra*; *Dunham v. Hunt Midwest Entertainment*, 2 Neb. App. 969, 520 N.W.2d 216 (1994).

■ The trial court did not cite to a particular subsection of this statute in its October 12, 2000, order sustaining the special appearance, but it relied upon *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). In *Internat. Shoe Co.*, the U.S. Supreme Court wrote that in order to subject a nonresident defendant to a judgment in personam, the nonresident defendant must have established minimum contacts with the forum state such that maintenance of a lawsuit there does not offend traditional notions of fair play and substantial justice. See, *Holste v. Burlington Northern RR. Co., supra*; *Higgins v. Rausch Herefords, supra*.

(a) General Jurisdiction, Aspect of Personal Jurisdiction

■ Determining whether Nebraska can exercise personal jurisdiction over a nonresident defendant requires that we review the issue in terms of both general and specific jurisdiction. See, *Higgins v. Rausch Herefords*, 9 Neb. App. 212, 609 N.W.2d 712 (2000); *Dunham v. Hunt Midwest Entertainment, supra*. Under the concept of general jurisdiction, the plaintiff's claim does not have to arise directly out of the defendant's contacts with the

forum state, provided that the defendant has engaged in continuous and systematic general business contacts with the forum state. *Id.* In both *Higgins* and *Dunham,* the determination of whether the defendant's general business contacts qualified as "continuous and systematic" or "substantial" to satisfy general jurisdiction was made by examining all the defendant's activities that impacted the forum state, " ' "including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated there." ' " *Higgins v. Rausch Herefords,* 9 Neb. App. at 219, 609 N.W.2d at 718, quoting *Dunham v. Hunt Midwest Entertainment, supra.*

In a hearing on a special appearance, an affidavit may be used to prove or disprove the factual basis for a court's assertion or exercise of personal jurisdiction over a defendant. *Williams v. Gould, Inc.,* 232 Neb. 862, 443 N.W.2d 577 (1989). In the instant case, Young's affidavit alleges that NABCO does not sell its products to retail consumers in Nebraska or any other state. Young further alleged in the affidavit that NABCO sent the alternator ultimately sold to Robinson to an independent distributor in Kansas City, Missouri, named Western Auto/Advanced Automotive Supply Company, and that NABCO does not employ anyone in Nebraska, including an agent in Nebraska; does not maintain an office, place of business, inventory, or bank accounts in this state; does not own or rent real or personal property here; does not pay taxes to Nebraska; and is not incorporated in Nebraska or registered as a foreign corporation authorized to conduct business in this state. Young's unrebutted affidavit proves that NABCO has no "continuous and systematic" or "substantial" general business contacts with Nebraska.

Upon the filing of a special appearance, the plaintiff has the burden to establish facts which demonstrate the court's personal jurisdiction over the defendant. *Dunham v. Hunt Midwest Entertainment,* 2 Neb. App. 969, 520 N.W.2d 216 (1994). Here, Robinson clearly failed to carry his burden with respect to proving general personal jurisdiction over NABCO because he offered no evidence that NABCO has "continuous and systematic" or "substantial" general business contacts with Nebraska; Young's affidavit proves the opposite proposition.

### (b) Specific Jurisdiction, Another Aspect
### of Personal Jurisdiction

If a defendant's contacts with a forum state are neither substantial nor continuous and systematic, but the cause of action arises out of or is related to the defendant's contact with the forum state, a court may assert specific jurisdiction over the defendant depending on the quality and nature of such contact. *Higgins v. Rausch Herefords, supra*; *Dunham v. Hunt Midwest Entertainment, supra*. In *Higgins*, we quoted *Lake v. Lake*, 817 F.2d 1416 (9th Cir. 1987), which provided the following analysis to determine whether specific jurisdiction over a nonresident defendant exists:

> "(1) [T]he nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

9 Neb. App. 212, 220, 609 N.W.2d 712, 719 (2000).

"Purposeful availment" means that the defendant's connection with the forum state must be deliberate and substantial, involving significant activities or continuing obligations. *Id.* The connection cannot be random, fortuitous, attenuated, or the result of another party's unilateral activities. *Id.*, citing *Dunham v. Hunt Midwest Entertainment, supra*. The foreseeability which is crucial to due process is that the defendant's conduct in connection with the forum state is such that he or she should reasonably anticipate being haled into court there. *Dunham v. Hunt Midwest Entertainment, supra*.

In both *Higgins* and *Dunham*, there was an issue as to whether advertising within the forum state established sufficient minimum contacts for Nebraska's exercise of personal jurisdiction, general and specific, over the nonresident defendants. Here, there is no evidence whatsoever in the record that NABCO advertises in Nebraska; plus, Young states in his affidavit that

NABCO does not sell to retail customers. We simply cannot find any purposeful directing of its business activities toward Nebraska, or purposeful availment of the benefits and protections of Nebraska law, sufficient to support a finding of specific jurisdiction on the record before us. But Robinson presents another legal theory to argue that Nebraska has specific personal jurisdiction over NABCO.

### (c) "Stream of Commerce" Theory of Specific Personal Jurisdiction

Robinson argues that his amended petition, alleging that NABCO "knowingly placed its . . . Sentry Gold Alternator in the stream of commerce so that it would reach an ultimate consumer, such as the Plaintiff" in Nebraska, states sufficient facts to show that Nebraska may subject NABCO to its jurisdiction. He cites *Hetrick v. American Honda Motor Co., Inc.*, 429 F. Supp. 116 (D. Neb. 1976), where a Nebraska federal district court held that the "stream of commerce" proposition established sufficient contacts by a nonresident company with Nebraska to permit the exercise of personal jurisdiction over the company. Hetrick filed a tort action against Honda Motor Company, Ltd. (Honda), a corporation organized and existing under Japan's laws, and American Honda Motor Company, Inc., the exclusive distributor within the United States of products manufactured by Honda. The court denied Honda's motion to dismiss the action for lack of personal jurisdiction because it found due process concerns were satisfied as Honda had "reason to know that its products, traveling through interstate commerce, will reach an ultimate consumer in any state of the United States." *Id.* at 118. In so finding, the *Hetrick* court cited to another Nebraska federal district court decision, *Blum v. Kawaguchi, Ltd.*, 331 F. Supp. 216 (D. Neb. 1971). The *Hetrick* court noted that the *Blum* court said that the long-arm statute does not require direct contacts, and that " 'it does not follow that an indirect sale would necessarily alter the nature of the transaction. It might be a different situation had the defendant made a sale elsewhere with the expectation that it was to be a final sale (that is, not for resale).' " 429 F. Supp. at 118. The stream of commerce theory of personal jurisdiction in a products liability action applies when a defendant knows that its products, traveling

through interstate commerce, will reach an ultimate consumer in a particular state of the United States, regardless of whether direct contact with that state occurred.

Robinson argues that because NABCO intended to place the alternator in the "stream of commerce," NABCO must have expected the alternator would be installed in a vehicle in Nebraska owned by a Nebraska resident, making the company subject to the personal jurisdiction of Nebraska. But a more recent product liability case decided by the Nebraska Supreme Court extends the *Hetrick* analysis. In *Wagner v. Unicord Corp.*, 247 Neb. 217, 526 N.W.2d 74 (1995), the court determined whether Nebraska had personal jurisdiction over the Illinois polyester rope manufacturer, Unicord Corporation, which sold its product to a Florida company, which delivered the product to Precision Sewing Company in Iowa. Unbeknownst to Unicord, the Iowa company sold three spools of rope to Wagner's employer to secure tarps to truck trailers before transporting freight. Wagner fractured a wrist when he fell backward after the rope broke during his attempt to secure a tarp, and he brought a products liability action against Unicord in Nebraska. The only proven contact with Nebraska was that several libraries in different Nebraska towns subscribed to the Chicago yellow pages telephone book, in which Unicord was listed. The court described this as "unilateral contact" by library personnel and found that "unilateral contact" initiated by a third party normally is simply too remote to invoke personal jurisdiction over a defendant. *Id.* at 223, 526 N.W.2d at 78. The court wrote that placement of a product into the stream of commerce, without more, generally is not proof of purposefully directed conduct toward the forum state. *Id.*, citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).

There was no evidence that NABCO manufactured products with knowledge or the intent that they be sold in Nebraska. Young's affidavit shows that NABCO delivered goods to Western Auto/Advanced Automotive distribution centers in Kansas, North Carolina, Ohio, Texas, and Missouri—but not to Nebraska. However, in *Wagner*, the Nebraska Supreme Court noted that the plaintiff had failed to establish that Unicord had any expectation that the Iowa delivery was not a final sale. In the

instant case, Young's affidavit stated that NABCO does not control how Western Auto/Advanced Automotive distributes its products after receiving them from NABCO. Nonetheless, it is reasonable to assume that NABCO knew its remanufactured electrical automobile parts would be sold by the independent distributors including the Western Auto/Advanced Automotive in Missouri to an end user who could be a Nebraska resident, such as Robinson.

Thus, we turn to *Asahi Metal Industry Co. v. Superior Court, supra,* where an individual sued Asahi Metal Industry Co., Ltd. (Asahi), a Japanese manufacturer of motorcycle tire tube assemblies, for an accident in California which killed his wife and injured him when the rear tire of his motorcycle exploded. The individual's claims against the Taiwanese tire manufacturer, who had received valve stem assemblies from Asahi, and all other defendants were settled. The Taiwanese tire manufacturer filed a cross-complaint seeking indemnification from Asahi. The U.S. Supreme Court found that California lacked personal jurisdiction over Asahi, although a manager of the Taiwanese company averred that Asahi " ' "was fully aware that valve stem assemblies sold to [the Taiwanese company] and to others would end up throughout the United States and in California." ' " *Id.* at 107. The Court premised its decision on the idea that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* at 112.

The Supreme Court noted that Asahi did not conduct business in California; lacked an office, agents, employees, or property in the state; did not advertise or solicit business in California; and did not create, control, or employ the distribution system that brought its tire valve stems to the state. *Id.* The Court also based its decision on the idea that California's exercise of personal jurisdiction over a foreign company would be "unreasonable and unfair" because Asahi would have to defend itself in a foreign legal system—and because Asahi's dispute with the Taiwanese company, an indemnity action, would be submitted to California's judicial system when the state and individual plaintiff had "slight interests" in the outcome of the dispute. *Id.* at 116.

Although NABCO is not a foreign corporation for whom appearance in Nebraska courts would be similarly burdensome, under *Asahi Metal Industry Co., supra*, and *Wagner v. Unicord Corp.*, 247 Neb. 217, 526 N.W.2d 74 (1995), subjecting NABCO to personal jurisdiction in Nebraska's courts is not justified by Robinson's "stream of commerce" theory, at least on this record. Merely placing the alternator in the "stream of commerce" by distributing it to Western Auto/Advanced Automotive in Missouri does not constitute an act purposefully directed toward Nebraska. In *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987), the U.S. Supreme Court referred to the lack of evidence that Asahi "purposefully avail[ed]" itself of the California market by establishing a presence there, controlling the distribution system for its products there, or advertising in California. While it is not for us to say in this case how "purposeful availment" would be proved, we note that in *Dunham v. Hunt Midwest Entertainment*, 2 Neb. App. 969, 520 N.W.2d 216 (1994), substantial advertising in the Omaha area by a Missouri amusement park to lure Nebraska customers was found to be an insufficient basis for personal jurisdiction when Nebraska visitors to this park were injured in Missouri. See, also, *Higgins v. Rausch Herefords*, 9 Neb. App. 212, 609 N.W.2d 712 (2000) (lack of evidence of other sales of cattle in Nebraska by South Dakota ranchers advertising in national directories and publishing 800 numbers prevents finding of purposeful availment to Nebraska).

## V. CONCLUSION

In view of the foregoing authority, when all is said and done, it is Robinson's failure to carry his burden to establish facts demonstrating personal jurisdiction over NABCO which mandates a finding that there is no general or specific jurisdiction in the Nebraska courts over NABCO. Thus, we are required to uphold the trial court's sustaining of the special appearance and its dismissal of this action.

AFFIRMED.