JOUSH HATCHER, JR., APPELLANT, V.
RICHARD MCSHANE, APPELLEE.

670 N.W.2d 638

Filed November 4, 2003.   No. A-02-097.

Joush Hatcher, Jr., pro se.

James S. Jansen, Douglas County Attorney, and Jeffrey J. Lux for appellee.

Irwin, Chief Judge, and Sievers and Moore, Judges.

Sievers, Judge.

Joush Hatcher, Jr., convicted of and incarcerated for the crime of first degree murder, has sued Richard McShane, alleging slander and libel as a result of McShane's letter concerning Hatcher's crime, which letter was written to and published by the Omaha World-Herald newspaper. The trial court sustained McShane's demurrer on the grounds that there had been a failure to comply with the Political Subdivisions Tort Claims Act and that the substance of the publication "appears to be true." The trial court dismissed the lawsuit, and Hatcher appealed to this court.

## FACTUAL BACKGROUND

McShane's letter, attached to Hatcher's pro se petition, recounts that 23 years after Hatcher pled guilty to the first degree murder of Charles Dobbertin, a Douglas County deputy sheriff, Hatcher was

again attempting to have his conviction overturned. McShane said in his letter that he wanted to "remind this confessed killer that [Hatcher's] actions and his alone on that cold, Dec[ember] 2, 1977 day are the reason[s] for the life sentence." McShane's letter then claimed that while off duty, Dobbertin observed Hatcher stealing packages from a United Parcel Service truck, whereupon Dobbertin stopped, gave chase, and was knocked unconscious after a brief struggle. According to the letter, Hatcher took Dobbertin's revolver, ran, stopped, and then returned to shoot Dobbertin twice "in cold blood," knowing Dobbertin was a deputy sheriff. McShane's letter then says: "This was an execution. It was not accidental and upon a sudden quarrel, as Hatcher contends in his latest appeal." The balance of McShane's letter recounts how he had guarded the then 20-year-old Hatcher, who carried a Bible with him to court as a sign of remorse and pled guilty to avoid the death penalty. McShane suggests that if Hatcher would have read the Bible before the day of the killing, both Hatcher's and Dobbertin's lives might have been saved.

This letter sparked Hatcher's lawsuit seeking damages of $100,000 and a retraction from McShane, who had described himself in his letter as "Douglas County sheriff chaplain, Nebraska Fraternal Order of Police." In Hatcher's petition against McShane, Hatcher admits that he was convicted of first degree murder and that he purposely and with deliberate and pre-meditated malice did kill. But he further states that the facts in the court record "reveal a sudden quarrel and [an] ensuing killing during [a] struggle precipitated by [Dobbertin,] who attacked [Hatcher] with a loaded gun." Hatcher then alleges that McShane's version set forth in his letter is a "completely unmit-igated fabrication." Hatcher then alleges that the gun accidentally discharged when Dobbertin initiated an encounter with Hatcher and a struggle ensued over Dobbertin's weapon. Hatcher con-cludes that McShane's account of the incident and labeling of the killing as "an execution" are totally untrue, not supported by court records, and "clearly inflammatory." As a result, Hatcher brings a civil action against McShane "for defamation of charac-ter, and slander and libel for the amount of $100,000.00 because his comments were totally wrong, and inaccurate and completely false as well as unfounded."

## ASSIGNMENTS OF ERROR

Hatcher claims, summarized and restated, that the demurrer was wrongfully sustained and that the dismissal of his lawsuit was improper. He also claims that the court erred in failing to grant him a default judgment when McShane had been served with summons but did not respond to the petition within the 30-day timeframe.

## STANDARD OF REVIEW

An order sustaining a demurrer will be affirmed if any one of the grounds on which it was asserted is well taken. *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 254 Neb. 754, 579 N.W.2d 526 (1998). In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Id.* When a demurrer to a petition is sustained, a court must grant leave to amend the petition unless it is clear that no reasonable possibility exists that amendment will correct the defect. *Vanice v. Oehm*, 255 Neb. 166, 582 N.W.2d 615 (1998).

## ANALYSIS

*Default Judgment and Second Summons.*

Hatcher assigns as error the failure of the trial court to grant him default judgment after McShane had been served with summons. Hatcher also asserts error by the trial court in entering an order directing service of process a second time. Initially, we note that while there were apparently several court hearings, none of those hearings were recorded, a matter about which Hatcher also complains. We do not know what was said by the parties or the court at those proceedings, but the rule is that court proceedings at which evidence is adduced must be recorded and that other proceedings are to be recorded when a party so requests. See *Robinson v. NABCO, Inc.*, 10 Neb. App. 968, 641 N.W.2d 401 (2002). Because none of the proceedings were recorded, we must assume that there was no evidence adduced and no request for a court reporter to take down the proceedings. Thus, we move on to the matter of service of process.

On July 3, 2001, Hatcher filed a praecipe asking that McShane be personally served at his residence in Omaha, Nebraska. The return by a civil process server shows that 3 days later, McShane was served personally at the "Hall of Justice, 2nd Floor Security, in Douglas County, Nebraska, at 3:15 p.m." No answer or other pleading was filed by McShane by September 18, when Hatcher filed a motion for default judgment asserting that McShane had been served but had defaulted. A district court journal entry on that same day states that the "clerk [is] directed to issue and serve summons in accordance with [the] praecipe." The court's journal entry also shows that the motion for default judgment was denied and that there was a "letter to [Hatcher]," which letter we do not have. Our transcript then contains a typed praecipe, in contrast to Hatcher's original handwritten praecipe, directing the clerk of the court to issue "[s]ummons upon . . . McShane at [his residence in] Omaha, Nebraska . . . (per Judge Hartigan's order of 9/18/01)." The address was the same as the one Hatcher had used in his praecipe for summons. The return of the civil process server shows that he received the papers on November 30 and served the same on December 3 upon McShane by delivering it to him "personally at [the] Hall of Justice, 1701 Farnam Street, 2nd Floor Holding, in Douglas County, Nebraska, at 8:55 a.m." Thus, the second service per the judge's order was service in the same manner and at the same location as under Hatcher's praecipe. McShane, through counsel, then filed a demurrer on December 18.

Hatcher's argument is that there was no basis for the issuance of a second summons because McShane had been validly served the first time in July 2001 and had not responded to the lawsuit, and that Hatcher was therefore entitled to default judgment rather than McShane's being entitled to have a second summons served upon him pursuant to the judge's order. Lacking any transcription of hearings or explanation by the court in its orders beyond what we have previously stated, we can only surmise that the court believed that the original praecipe requesting personal service at McShane's home address had to be strictly complied with and that service at his place of employment at the Hall of Justice on July 6 was for some reason invalid—even though McShane had not challenged service.

■ If we have correctly surmised the court's rationale for its denial of the motion for default judgment and for ordering service of process a second time on its own accord, we have found no authority for the proposition that personal service upon a defendant at a location other than the one specified in the praecipe voids the service. In fact, we think the law is otherwise. We proceed by analogy from Neb. Rev. Stat. § 25-505.01 (Reissue 1995) which provides for the service of summons and the methods thereof. The statute indicates that a plaintiff "may elect to have service made by any of the following methods," and then it provides for personal service, residence service, and certified mail service. However, § 25-505.01(2) expressly provides: "Failure to make service by the method elected by the plaintiff does not affect the validity of the service." From this language, we obviously must conclude that personal service at work rather than at home, despite the designation on the praecipe of where service should be effected, is nonetheless valid service. Therefore, we find that the court erred in ordering that McShane be served a second time. However, this conclusion does not mean that there was error in the failure to enter default judgment, even though McShane was in default.

■ The standard for entry of a default judgment has long been established. Where a defendant is in default, the allegations of the petition are to be taken as true against him or her, except allegations of value and amount of damage; and if the petition states a cause of action, the plaintiff is entitled to judgment without proof except as to the quantum of damages. *Weir v. Woodruff*, 107 Neb. 585, 186 N.W. 988 (1922); *State on behalf of Yankton v. Cummings*, 2 Neb. App. 820, 515 N.W.2d 680 (1994). As discussed below, Hatcher's petition does not state a cause of action because it does not allege how McShane's letter is defamatory and does not allege special damages—both being essential elements of a claim for defamation per quod, as discussed in the next section of our opinion. Therefore, while the order for the issuance of a second summons was error, it was a superfluous and meaningless order because Hatcher was not entitled to default judgment.

*Defamatory Letter?*

We note that Hatcher has attached McShane's letter to the petition so we know exactly what is alleged to constitute the

defamation. Hatcher also admits in his petition that he is a convicted first degree murderer as a result of the death of Dobbertin and that "[Hatcher] purposely and with deliberate and premeditated malice [did] kill." When Hatcher's defamation claim is reduced to its essence, it is apparent that Hatcher wishes to quibble with McShane about precisely how it was that Hatcher came to kill Dobbertin, irrespective of Hatcher's conviction of first degree murder for Dobbertin's death. That conviction necessarily requires the conclusion, also admitted by Hatcher's pleading, that Dobbertin was killed with premeditation and intent, given the elements of first degree murder. See Neb. Rev. Stat. § 28-303 (Reissue 1995) (murder in first degree is committed by killing another person purposely and with deliberate and premeditated malice).

Defamation is of two types. There are words that are actionable per se, that is, in themselves, or words may be actionable per quod, that is, only on allegation and proof of the defamatory meaning of the words used and of special damages. See *K Corporation v. Stewart*, 247 Neb. 290, 526 N.W.2d 429 (1995). Spoken or written words are slanderous or libelous per se only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one. *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991).

In the case at hand, McShane's letter cannot falsely impute the commission of a crime involving moral turpitude, since Hatcher's petition admits his conviction for first degree murder. The letter makes no mention of an infectious disease, and Hatcher holds no office or employment. Nor does he have a profession or trade, and anything McShane said in his letter does not tend to disinherit Hatcher. As a result, the letter is not libelous per se. Thus, we turn to the second type of defamation.

Is the letter defamation per quod? This type of defamation requires the allegation and proof of the defamatory meaning of the words used *and* of special damages. See *Norris v. Hathaway*, 5 Neb. App. 544, 561 N.W.2d 583 (1997). We have previously spoken of special damages as those suffered by a claimant because they are out-of-pocket damages. See *Sabrina W. v. Willman*, 4 Neb.

App. 149, 540 N.W.2d 364 (1995). Special damages are those capable of accurate determination by some means other than the opinion of the judge or jury. See *Southwell v. DeBoer*, 163 Neb. 646, 80 N.W.2d 877 (1957). In the instant case, there is absolutely no allegation of special damages, and thus, the petition fails to state a cause of action and is demurrable on that ground.

Additionally, we consider the second half of the equation for dismissal upon a demurrer: Is there a reasonable possibility that Hatcher could allege special damages? We must answer in the negative. Hatcher, a convicted first degree murderer serving a life sentence, does not have a reasonable possibility of suffering out-of-pocket damages from anything McShane says about the precise details of how that crime was committed.

Moreover, there is no allegation of how the words used by McShane in characterizing the crime as "an execution" are defamatory to Hatcher, a confessed first degree murderer who admits to killing, in the words of his petition, "with deliberate and premeditated malice." In fact, the common dictionary meaning of "execution" or "execute" is to put to death according to law. See Webster's Encyclopedic Unabridged Dictionary of the English Language 498 (1989). Thus, by calling Dobbertin's killing an "execution," McShane has incorrectly attributed, at least by the dictionary definition, an element of legality to it. However, we recognize that the colloquial meaning of "execution" is on the order of a heartless and intentional killing, which is an accurate layman's description of first degree murder. Thus, McShane accuses Hatcher of what Hatcher admits doing. While we are somewhat hesitant to say that as a matter of law, a convicted first degree murderer could never be defamed by a communication discussing or characterizing his or her crime, we have no hesitancy in saying that McShane's letter, as a matter of law, is not defamatory. Therefore, the petition does not state a cause of action, nor could it be amended to do so. Thus, while our reasoning differs somewhat from the trial court's, we nonetheless conclude that the sustaining of the demurrer and the dismissal of the lawsuit must be affirmed. See *Staman v. Yeager & Yeager*, 238 Neb. 133, 469 N.W.2d 532 (1991). It also follows that because the petition does not state a cause of action, Hatcher was not entitled to a default judgment.

## CONCLUSION

Given that an appellate court need not address issues unnecessary to the decision, we do not address the matter of the Political Subdivisions Tort Claims Act. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994). For the foregoing reasons, we affirm the trial court's order sustaining McShane's demurrer and dismissing Hatcher's lawsuit.

AFFIRMED.